1
2

JS - 6

3
4
5
6

UNITED STATES DISTRICT COURT

7

CENTRAL DISTRICT OF CALIFORNIA

8
9

RICARDO HUITRON, an individual,                   )   CASE NO. CV 14-09402 MMM (PLAx)
                                                  )
10

Plaintiff,                                 )
                                                  )   ORDER GRANTING PLAINTIFF'S
11

vs.                                        )   MOTION TO REMAND
                                                  )
12

U.S. FOODS, INC., a Delaware corporation;         )
U.S. FOODSERVICE, INC., a Delaware                )
13

corporation; HUGO JIMENEZ, a                      )
individuals; and DOES 1 to 50, inclusive,         )
14                                                )
Defendants.                                )
15                                                )

16

17          On January 14, 2014, Ricardo Huitron filed the action against U.S. Foods, Inc. ("US Foods"),

18   U.S. Foodservice, Inc., Hugo Jimenez (collectively, "defendants"), and certain fictitious defendants.[1]

19   He filed a first amended complaint on February 10, 2014, alleging claims for violation of California

20   Labor Code § 6310; wrongful termination in violation of public policy; slander; and libel.[2]  On July 14,

21   2014, defendants removed the action to this court, invoking the court's diversity jurisdiction on the

22   ground that Jimenez had been fraudulently joined.[3]  On July 24, 2014, the court issued an order to show

23   cause why the case should not be dismissed for lack of complete diversity, noting that it was unclear

24

25          [1]The original complaint was apparently never served and is not part of the record in this case.

26          [2]Notice of Removal ("Removal"), Docket No. 1 (Dec. 5, 2014), Exh. 1 ("FAC").  Unless
27   otherwise indicated, all citations are to Case No. 14-9402-MMM.

28          [3]Notice of Removal, Case No. 14-5482-MMM, Docket No. 1 (Jul. 14, 2014).

Jimenez had been fraudulently joined.[4]  Defendants filed a response to the order to show cause, and Huitron filed a reply, requesting remand.[5]  On August 25, 2014, the court issued an order remanding the action to Los Angeles Superior Court after finding that defendants had failed to meet their burden of demonstrating that Jimenez had been fraudulently joined.[6]

On December 5, 2014, defendants filed a second notice of removal, asserting that Huitron's claims were completely preempted by § 301 of the Labor Management Relations Act ("LMRA") and invoking the court's federal question jurisdiction.  Section 301 gives federal courts exclusive jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization."  29 U.S.C. § 185(a).[7]  On January 5, 2015, Huitron filed a motion to remand.[8]  Defendants oppose the motion.[9]  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds this matter appropriate for decision without oral argument; the hearing calendared for April 6, 2015, is therefore vacated, and the matter taken off calendar.

## I.  FACTUAL BACKGROUND

Huitron alleges that US Foods hired him in July 2010 to work as an order selector in its warehouse and distribution center in La Mirada, California.[10]  He contends that beginning in or about May 2013, he became concerned about the warehouse's use of "triple jacks," "a type of . . . extra

---

[4]Order to Show Cause, Case No. 14-5482-MMM, Docket No. 14 (Jul. 24, 2014).

[5]Response to Order to Show Cause, Case No. 14-5482-MMM, Docket No. 15 (Jul. 31, 2014); Reply in Support of Remand, Case No. 14-5482-MMM, Docket No. 16 (Aug. 6, 2014).

[6]Order Remanding Case, Case No. 14-5482-MMM, Docket No. 19 (Aug. 25, 2014).

[7]Removal at 1.

[8]Motion to Remand ("Motion"), Docket No. 15 (Jan. 5, 2015). See also Reply in Support of Motion to Remand ("Reply"), Docket No. 18 (Mar. 23, 2015).

[9]Opposition to Motion to Remand ("Opposition"), Docket No. 17 (Mar. 16, 2015).

[10]FAC, ¶ 9.

long forklift used to move pallets."[11]  Huitron alleges that his experience caused him to know or reasonably believe that the triple jacks were not being used properly within the warehouse, and that they "posed an immediate threat to his own physical safety and the safety of his co-workers."[12] Huitron contends he alerted US Foods' management to the issue, but his concerns went unaddressed.[13]

Huitron maintains that he subsequently called US Foods' "purportedly anonymous integrity hotline" to report these workplace safety issues on May 23, 2013.[14]  He states that during this call, he informed US Foods that he intended to contact California's Division of Occupational Safety and Health ("OSHA") as well.[15]  Huitron subsequently did report his concerns to OSHA; he purportedly received a written confirmation dated May 30, 2013.[16]

Huitron contends that shortly after his May 23, 2013 complaint to management, he was singled out for poor treatment.  The first amended complaint describes three primary incidents that purportedly evidence this.  First, on May 29, 2013, Huitron's manager, Jimenez, allegedly "made negative remarks to [Huitron] and expressed his dissatisfaction and anger with . . . [Huitron] because [Huitron] had made the complaints to [OSHA]."[17]  On approximately September 17, 2013, Huitron assisted a coworker with a work assignment.  He contends that "when Jimenez saw that [Huitron] was performing this additional work out of order . . . he accused him of 'cherry picking.'"[18]  Huitron was purportedly suspended without pay "immediately."  According to Huitron, Jimenez made false

---

[11]*Id.*, ¶ 10.

[12]*Id.*

[13]*Id.*

[14]*Id.*, ¶ 11.

[15]*Id.*

[16]*Id.*

[17]*Id.*, ¶ 12.

[18]*Id.*, ¶ 13.

statements about Huitron "on the same and/or the following day."[19]  He also asserts that Jimenez made additional false statements about him to the union shop steward at a grievance meeting held on October 21, 2013, purportedly telling the steward and other attendees that Huitron "was dishonest, a liar and/or that [Huitron] had lied to Jimenez about where and/or how he received the additional work assignment" that was the subject of the "cherry picking" incident.[20]  Huitron also contends that Jimenez's purportedly false statements were "repeated . . . by Jimenez and other employees and/or agents of [US Foods]"; Huitron contends such statements were also "re-stated and re-published in company documents discussing the reasons for [Huitron's] termination."[21]

Just over a week after the "cherry picking" comment, on September 28, 2013, US Foods terminated Huitron purportedly "in retaliation for . . . having made . . . health and safety complaints."[22]  Huitron contends he was not notified of the termination decision until October 2, 2013.[23]

## II. DISCUSSION

### A.    Legal Standard Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute.  See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).  The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000.  See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1331, 1332(a).  A case presents a "federal question" if a claim "'aris[es] under the Constitution, laws, or treaties of the United States.'"  *Sullivan v. First Affiliated Securities, Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987) (quoting 28 U.S.C. § 1331).  Only state court

---

[19]*Id.*, ¶ 13.

[20]*Id.*

[21]*Id.*

[22]*Id.*, ¶ 14.

[23]*Id.*

actions that could originally have been filed in federal court may be removed.  28 U.S.C. § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).          Whether removal jurisdiction exists must be determined by reference to the "well-pleaded complaint."  *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986).  The well-pleaded complaint rule makes plaintiff the "master of the claim."  *Caterpillar*, 482 U.S. at 392.  Thus, where plaintiff can state claims under both federal and state law, he can prevent removal by ignoring the federal claim and alleging only state law claims.  *Rains v. Criterion Systems, Inc.*, 80 F.3d 339, 344 (9th Cir. 1996).[24]

There is an exception to the "well pleaded complaint" rule, however.  Under the "artful pleading" doctrine, a plaintiff cannot defeat removal of a federal claim by disguising or pleading it artfully as a state law cause of action.  If the claim arises under federal law, the federal court will recharacterize it and uphold removal.  *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 n. 2 (1981); *Schroeder v. TransWorld Airlines, Inc.*, 702 F.2d 189. 191 (9th Cir. 1983).  The "artful pleading" doctrine applies to state claims that are completely preempted by federal law.  See *Caterpillar*, 482 U.S. at 393 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law"); *ARCO Environmental Remediation, L.L.C. v. Department of Health & Environmental Quality of Montana*, 213 F.3d 1108, 1114 (9th Cir. 2000) ("A state-created cause of action can be deemed to arise under federal law . . . where federal law completely preempts state law").

To support a finding of complete preemption, the preemptive force of the federal statute at issue must be "extraordinary."  See *Metropolitan Life Ins. Co.*, 481 U.S. at 65; *Holman v. Laulo-Rowe*

---

[24]It is not enough for removal purposes that a federal question may arise in connection with a defense or counterclaim.  "[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar*, 482 U.S. at 392.  See also *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).  "A defense is not part of a plaintiff's properly pleaded statement of his or her claim."  *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998).  See also *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).  Thus, "a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."  *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 14 (1983).

*Agency*, 994 F.2d 666, 668 (9th Cir. 1993) ("The [complete preemption] doctrine applies in select cases where the preemptive force of federal law is so 'extraordinary' that it converts state common law claims into claims arising under federal law for purposes of jurisdiction," citing *Caterpillar*, 482 U.S. at 386). For this reason, the complete preemption doctrine is narrowly construed.  See *Holman*, 994 F.2d at 668 ("The [complete preemption] doctrine does not have wide applicability; it is a narrow exception to the 'well-pleaded complaint rule'"); *Gatton v. T-Mobile USA, Inc.*, No. SACV 03-130 DOC, 2003 WL 21530185, *5 (C.D. Cal. Apr. 18, 2003) ("The complete preemption doctrine is, however, extremely narrow," citing *TPS Utilicom Services, Inc. v. AT & T Corp.*, 223 F.Supp.2d 1089, 1097 (C.D. Cal. 2002)).  "[O]nly three areas have been deemed areas of complete preemption by the United States Supreme Court: (1) claims under the [LMRA]; (2) claims under the Employment Retirement and Insurance Security Act (ERISA); and (3) certain Indian land grant rights."  *Gatton*, 2003 WL 21531085 at *5; see also *Robinson v. Michigan Consolidated Gas Co., Inc.*, 918 F.2d 579, 585 (9th Cir. 1990) ("complete preemption . . . is extremely limited, existing only where a claim is preempted by [the LMRA]; where a state law claim alleges a present right to possession of Indian tribal lands; and where state tort or contract claims are preempted by [ERISA]" (internal citations omitted)).

### B.     Whether the Court Has Federal Question Jurisdiction

#### 1.     Legal Standard Governing § 301 Preemption

Section 301(a) of the LMRA gives federal courts exclusive jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization."  29 U.S.C. § 185(a).  See *Franchise Tax Bd.*, 463 U.S. at 23 ("The preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'  Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301"); see also *Caterpillar*, 482 U.S. at 394 ("Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement,'" quoting *Electrical Workers v. Hechler*, 481 U.S. 851, 859 n. 3 (1987)).  Section 301 "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes."  *Lingle v. Norge Division of Magic*

*Chef, Inc.*, 486 U.S. 399, 404 n. 3 (1988).

To further the goal of uniform interpretation of labor contracts, the preemptive effect of § 301 has been extended beyond suits that allege the violation of a collective bargaining agreement. See *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-11 (1985) ("The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation"). Thus, a state law claim will be preempted if it is so "inextricably intertwined" with the terms of a labor contract that its resolution will require judicial interpretation of those terms. *Id.* at 213 (holding that a claim for breach of the duty of good faith and fair dealing was preempted by § 301 because "good faith" and "fair dealing" had to be assessed with reference to the contractual obligations of the parties).

Despite the broad preemptive effect of § 301, a claim that seeks to vindicate "nonnegotiable state-law rights . . . independent of any right established by contract" is not within its scope. *Allis-Chalmers Corp.*, 471 U.S. at 213; see also *Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994) ("[Section] 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law. . . . [I]t is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement . . . that decides whether a state cause of action may go forward" (citations omitted)).[25]   As a result, if a state law cannot be waived or modified by private contract, and if the rights it creates can be enforced without resort to the particular terms, express or implied, of a labor contract, § 301 does not preempt the claim for violation of the law. See *Miller v. AT & T Network Systems*, 850 F.2d 543, 546 (9th Cir. 1988).  "If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc), cert. denied 534 U.S. 1078 (2002).

Nor can a defendant invoke preemption merely by alleging a "hypothetical connection between

---

[25]The *Livadas* Court held that the state law claim asserted in that case required only that the court "look to" the CBA to determine the applicable rate of pay.  The fact that there was "no indication . . . there was a 'dispute'" regarding the rate of pay, it held, "foreclose[d] even a colorable argument" of preemption." *Livadas*, 512 U.S. at 124-25.

the claim and the terms of the CBA," or a "creative linkage" between the subject matter of the suit and the wording of the CBA. *Id.* at 691-92. To prevail, "the proffered interpretation argument must reach a reasonable level of credibility." *Id.* at 692. A preemption argument is not credible "simply because the court may have to consult the CBA to evaluate [a plaintiff's claim]; [similarly,] 'look[ing] to' the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption." *Id.* (quoting *Livadas*, 512 U.S. at 125).

In *Cramer*, the Ninth Circuit clarified the scope of the LMRA's preemptive effect:

> "To the extent our prior cases held or implied that preemption was proper because of the mere possibility that the subject matter of the claim was a proper subject of the collective bargaining process, whether or not specifically discussed in the CBA, we today hold such statements to be an incorrect articulation of § 301 preemption principles. A state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute." *Id.* at 693.

See also *Humble v. Boeing Co.*, 305 F.3d 1004, 1007-08 (9th Cir. 2002) (recognizing that *Cramer* "revised [the] framework for analyzing § 301 preemption and synthesized the considerations involved").

The Ninth Circuit has articulated a two-part test to determine whether a cause of action is preempted by the LMRA. *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). First, the court must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and . . . analysis ends. . . . If however, the right exists independently of the CBA, [the court] must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.' If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law." *Id.* at 1059-60 (citations omitted).

### 2. Whether Huitron's Claims are Preempted

#### (a) Retaliatory Termination in Violation of Labor Code § 6310

Huitron's first claim alleges violation of California Labor Code § 6310. That section provides, *inter alia*, that "[n]o person shall discharge or in any manner discriminate against any employee because

the employee has done any of the following: (1) Made any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative[;] (2) Instituted or caused to be instituted any proceeding under or relating to his or her rights or has testified or is about to testify in the proceeding or because of the exercise by the employee on behalf of himself, herself, or others of any rights afforded him or her." CAL. LAB. CODE § 6310(a). Section 6310(b), in turn, provides: "Any employee who is discharged . . . because the employee has made a bona fide oral or written complaint to . . . governmental agencies . . . [or] his or her employer . . . of unsafe working conditions, or work practices, in his or her employment or place of employment . . . shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer." *Id.*, § 6310(b). "The public policy behind § 6310 is . . . to prevent retaliation against those who in good faith report working conditions they believe to be unsafe." *Freund v. Nycomed Amersham*, 347 F.3d 752, 759 (9th Cir. 2003) (citing *Hentzel v. Singer Co.*, 138 Cal.App.3d 290, 298 (1982)); see also *Taylor v. Lockheed Martin Corp.,* 78 Cal.App.4th 472, 485 (2000) ("Labor Code section 6310 is part of California's statutory scheme for occupational safety"). Huitron alleges that US Foods terminated him for "making a complaint to the company and/or to [ ]OSHA of unsafe working conditions or work practices in his employment or place of employment" in violation of Labor Code § 6310.[26]

Defendants argue that § 301 preempts this claim because any determination as to whether Huitron's discharge violated this statute is substantially dependent on analysis of the CBA.[27] They contend that Huitron has asserted that US Foods lacked "good cause" to terminate his employment because previously, it suspended rather than discharged two other employees who engaged in cherry-picking. Defendants do not elaborate on whether the employees were similarly[ ]situated to Huitron, but even assuming they were, the argument fails to justify preemption in this case.     Article 21 of the CBA provides that US Foods "shall have the right to discharge or otherwise discipline any employee for good cause." It states that any "failure to invoke discharge or the strictest form of other discipline on one

---

[26]Complaint, ¶ 17.

[27]Opposition at 13.

occasion for the commission of an offense constituting good cause for discharge or discipline shall not affect the right of [US Foods] to invoke discharge or a different or stricter form of other discipline for a later or different commission of the same offense."[28] Thus, they maintain that US Foods' disciplinary decisions were a result of, and must be viewed through, the prism of the CBA's disciplinary provision.

As the Supreme Court stated in *Livadas*, however, § 301

"cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law. . . . [I]t is the legal character of a claim, as 'independent' of rights under the collective bargaining agreement (and not whether a grievance arising from 'precisely the same set of facts' could be pursued) that decides whether a state cause of action may go forward." *Livadas*, 512 U.S. at 123.

In *Lingle,* an employee filed a grievance pursuant to a CBA that protected workers from discharge except for 'just cause' and that provided for arbitration of disputes between the employer and employee concerning the effect or interpretation of the CBA. *Lingle,* 486 U.S. at 401. While an arbitration was pending, the employee filed a retaliatory discharge action in an Illinois state court, alleging that the employer had retaliated against her for exercising her rights under Illinois worker's compensation laws. *Id.* at 402. The Supreme Court held that plaintiff's retaliatory discharge claim was "independent" of the CBA because resolution of the state-law claim did not require construction of the labor contract. *Id.* at 407.

Section 6310 prohibits an employer from discharging, or otherwise discriminating against, an employee who complains to his or her employer about "employee safety or health." CAL. LAB. CODE § 6310(a). Like the worker's compensation claim in *Lingle*, "[i]t therefore creates a statutory right that is 'independent of any right established by [the CBA].'" *Khdrlaryan v. Olympia Med. Ctr.*, No. CV 09-08141 DDP (FMOx), 2010 WL 2471061, *3 (C.D. Cal. June 15, 2010) (quoting *Allis-Chalmers,* 471 U.S. at 213). Stated differently, "[t]he operative issue here . . . is whether [d]efendants terminated [Huitron] *because* [ ]he complained about workplace safety, in violation of California's clearly

---

[28]Declaration of Candice Zee ("Zee Decl."), Docket No. 17-1 (Mar. 16, 2015), Exh. D ("CBA") at 23.

articulated labor policy. [Huitron]'s claim can be adjudicated without reference to the CBA, and thus, LMRA § 301 does not completely preempt [it]." *Id.* at *4 (finding no preemption of a wrongful termination in violation of public policy claim based on § 6310); accord *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 1001 (9th Cir. 1987) ("[A] claim is not preempted if it poses no significant threat to the collective bargaining process and furthers a state interest in protecting the public transcending the employment relationship").

Indeed, California federal courts have uniformly concluded that § 6310 is an independent statutory right such that claims asserted under it are not preempted by § 301. See *Ortiz v. Permanente Med. Grp., Inc*., No. CV 13-00460 SI, 2013 WL 1748049, *7 (N.D. Cal. Apr. 23, 2013) (no preemption of a wrongful termination claim based on the public policy set forth in § 6310); *Khdrlaryan*, 2010 WL 2471061, at *3 (same); *Perrapato v. The San Francisco Chronicle*, No. CV 05-1017 PJH, 2005 WL 2171876, *5 (N.D. Cal. Sept. 7, 2005) ("As with the Illinois plaintiff in *Lingle,* plaintiff's legal rights under § 6310 are independent of his rights under the CBA. Moreover, the factual inquiries involved in determining whether the Chronicle retaliated against plaintiff will not require the court to construe the CBA. Thus, the doctrine of complete preemption does not apply, and this court does not have subject matter jurisdiction."); accord *Lingle*, 486 U.S. at 409 ("[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing *precisely the same set of facts*, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." (emphasis added)).

Defendants dispute this conclusion; they contend that several discovery requests Huitron has propounded have "plainly [been] designed to procure information regarding cherry-picking and the discipline meted out for it under the CBA."[29] Defendants appear to assert that Huitron will attempt to prove retaliation by citing other instances in which employees who cherry-picked were not terminated; US Foods will apparently defend by citing the CBA provision that permits it to impose different levels of discipline on employees whose infractions are similar. Preemption does not turn on the evidence used

---

[29]Opposition at 15.

by a plaintiff to prove his claim, however.  "As explained in *Cramer*, the plaintiff's claim is the touchstone of preemption analysis, and 'the need to interpret the CBA must inhere in the nature of the plaintiff's claim' to trigger preemption.'"  *Humble*, 305 F.3d at 1008 (quoting *Cramer*, 255 F.3d at 691).[30]

More fundamentally, US Foods' recourse to the CBA is not essential to Huitron's case; the CBA would be construed, if at all, only in the context of evaluating US Foods' defense. As the Ninth Circuit noted in *Humble*, "reliance on CBA provisions to *defend* against an independent state law claim does not trigger § 301 preemption."  *Id.* at 1011 (emphasis added) (rejecting defendant's argument that, "when it offers a nondiscriminatory justification for its conduct by relying on authorizing CBA provisions, that suffices to trigger preemption of [plaintiff's] reasonable accommodation claim"); *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, __ F.Supp.3d __, 2014 WL 6896033, *15 (C.D. Cal. Dec. 5, 2014) ("[B]ecause . . . Newhall Memorial's reliance on § 514 is essentially a defense to Vasserman's overtime claim, it does not give rise to § 301 preemption"); *Placencia v. Amcor Packaging Distribution, Inc.*, No. SACV 14–0379 AG (JPRx), 2014 WL 2445957, *2 (C.D. Cal. May 12, 2014) ("[R]eliance on the CBA as an aspect of a defense is not enough to 'inject[ ] a federal question into an action that asserts what is plainly a state-law claim,'" citing *Caterpillar*, 482 U.S. at 399); *Martinez v. Kaiser Found. Hospitals*, No. C 12 1824 EMC, 2012 WL 2598165, *4 (N.D. Cal. July 5, 2012) ("Otherwise, virtually every claim of discrimination in regard to a union's administration of a member's rights under a CBA would be preempted since invariably a defendant union is likely to claim just cause in defense.  Such a sweeping result appears inconsistent with *Lingle*").

Consequently, defendants' argument that Huitron's § 6310 claim is completely preempted lacks merit.

### (b)   Wrongful Termination in Violation of Public Policy

Defendants next assert that Huitron's wrongful termination claim is completely preempted

---

[30]Moreover, "mere consultation of the CBA's terms[ ] or a speculative reliance on the CBA will not suffice to preempt a state law claim." *Humble*, 305 F.3d at 1008.  In this case, the terms of the CBA are not in dispute; thus, it would appear that, at most, the court would have only to consult the CBA, not interpret it.  For that reason as well, the court concludes that Huitron's § 6310 claim is not preempted.

1   because it is based on his § 6310 claim.  It is true that Huitron's wrongful termination claim is based on

2   a violation of the public policy set forth in § 6310.[31]

3        Under California law, the termination of an employee is tortious if it violates a fundamental

4   public policy of the state.  *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 176 (1980).  Such a claim

5   is known as a *Tameny* claim.  A plaintiff must show that the public policy on which a *Tameny* claim is

6   based is set forth in a constitutional or statutory provision, or in administrative regulations that serve a

7   statutory objective.  *Green v. Ralee Engineering Co.*, 19 Cal.4th 66, 79–80 (1998).  The public policy

8   set forth in § 6310 is an appropriate basis for a *Tameny* claim.  *Daly v. Exxon Corp.*, 55 Cal.App.4th 39,

9   44-5 (1997) (finding that plaintiff had alleged a § 6310 claim and noting that had she been "fired,

10  discharged, or terminated" before her contract expired, she could have asserted a *Tameny* claim as well);

11  *Dezham v. Macy's W. Stores, Inc.*, No. CV 13-01864 DOC, 2015 WL 46201, *15 (C.D. Cal. Jan. 2,

12  2015) ("Ms. Dezham bases her *Tameny* claim on the FEHA and California Labor Code § 6310, which

13  provides that employees cannot be terminated for making an oral or written complaint related to

14  workplace safety or health").

15       Defendants' only argument regarding the preemption of the wrongful termination claim is that

16  the § 6310 claim is preempted.  Because the court has concluded otherwise, defendants' claim with

17  respect to the wrongful termination claim fails as well.  More fundamentally, courts that have addressed

18  the issue have held that wrongful termination claims premised on § 6310 are not completely preempted

19  because statutory § 6310 claims are not preempted.  See *Ortiz*, 2013 WL 1748049 at *7 ("Defendants'

20  argument that § 301 preempts plaintiff's [wrongful termination] claim [based on the public policy set

21  forth in § 6310] misses the point.  While it may be true that the allegations in support of this claim

22  implicate the terms of the CBA, it is also true that the allegations independently implicate conduct

23  prohibited by section 6310.  The proper inquiry for § 301 preemption is not whether there is any overlap

24  between allegations that are preempted and those that are not, but rather whether the California tort

25  action as applied here confers nonnegotiable state-law rights on employers or employees independent

26  of any rights established by contract, or, instead, whether evaluation of the tort claim is inextricably

27

28      [31]FAC, ¶¶ 23-24.

13

1   intertwined with consideration of the terms of the labor contract.  Section 6310 prohibits retaliatory

2   discharge for making complaints to an employer.  Plaintiff's allegations in support of her Fourth claim

3   fit squarely within this prohibition, and are not intertwined or substantially dependent upon

4   consideration of the terms of [the CBA]" (internal citations and quotations marks omitted)); *Khdrlaryan*,

5   2010 WL 2471061 at *3 ("California law prohibits an employer from discharging, or otherwise

6   discriminating against, an employee who complains to his or her employer about employee safety or

7   health.  Section 6310(a), therefore, creates a statutory right that is independent of any right established

8   by [the CBA].  Whether Plaintiff followed the applicable CBA procedures for raising complaints about

9   staffing is immaterial-if Defendants fired her because she complained about a threat to workplace safety,

10  then she is entitled to prevail on her wrongful termination in violation of public policy claim" (internal

11  citations and quotation marks omitted)).

12      Consequently, the court concludes that the wrongful termination claim is not completely

13  preempted.

14                      **(c)      Defamation Claims**

15      Defendants next contend that Huitron's defamation claims are completely preempted by § 301.

16  "California's defamation law establishes nonnegotiable rights and obligations independent of any labor

17  contract."  *Tellez v. Pacific Gas and Elec. Co., Inc*., 817 F.2d 536, 538 (9th Cir. 1987).  The Ninth

18  Circuit has held that § 301 can completely preempt state law defamation claims in some circumstances,

19  however.  See, e .g., *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1063 (9th Cir. 1989) (holding that

20  a defamation claim based on a discharge notice was "inextricably intertwined" with a CBA and hence

21  preempted).  The inquiry is context-specific, and turns on whether the defamation claim is "inextricably

22  intertwined" with the CBA.  See *id.*

23      In *Tellez*, the Ninth Circuit held that "PG & E c[ould not] plausibly maintain that Tellez's claim

24  implicate[d] the collective bargaining agreement [as] [t]he agreement simply d[id] not govern [the]

25  allegedly defamatory conduct."  *Tellez*, 817 F.2d at 538.  The court noted that the CBA "neither

26  require[d] management to send written notice of suspension nor provide[d] guidelines in the event such

27  notice [wa]s sent."  As a result, it stated, Tellez's supervisor "could not have been acting under the terms

28  of the collective bargaining agreement when he sent the suspension letter," and "resolution of Tellez's

defamation claim d[id] not require interpretation or consideration of the [CBA]." *Id.*

Similarly, in *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 645 (9th Cir. 1989), plaintiff alleged that "he was defamed by . . . statements made by several SCGC employees accusing him of embezzlement, sexual harassment, and poor work performance. Jackson allege[d] that the[ ] statements were made public, although he [did] not state exactly how." *Id.* The Ninth Circuit concluded that, "[a]s in *Tellez,* Jackson's claim d[id] not implicate the collective bargaining agreement. Although it [wa]s not clear exactly how the alleged accusations were disseminated, viewing the facts alleged in the light most favorable to Jackson, the accusations d[id] not appear to have been made pursuant to any requirements of the disciplinary procedures. Accordingly, Jackson's defamation claim d[id] not require interpretation of the agreement and [wa]s not preempted." *Id.*

By contrast, the Ninth Circuit held that a defamation claim was preempted in *Shane v. Greyhound Lines, Inc*., 868 F.2d 1057, 1063 (9th Cir. 1989). There, the claim "appear[ed] to rest on [ ] [n]otices of [i]ntent to [d]iscipline, which, along with the discharge notices, [were] the only documents in the record containing the allegations of wrongdoing." *Id.* Unlike in *Tellez* or *Jackson*, the CBA in *Shane* "require[d] employers to notify employees of intended disciplinary action in writing, and simultaneously to notify their Union." Thus, the court held, "[a]ny claim based on the discharge notification [wa]s . . . 'inextricably intertwined' with the CBA." Consequently, it was preempted. *Id.*

Subsequent Ninth Circuit decisions have noted "the narrow ambit" of the decision in *Shane*. In *Lopez v. Fox Television Animation, Inc*., 76 Fed. Appx. 769, 772 (9th Cir. Aug. 8 2003) (Unpub. Disp.), the court explained that "*Shane* held the [defamation] claim preempted because the allegedly defamatory statements were contained in notices that were required under the collective bargaining agreement." *Id.* (citing *Shane*, 868 F.2d at 1063). In Lopez's case, by contrast, "the allegedly defamatory acts were remarks that existed independently of the collective bargaining agreement. Thus, [the court] reverse[d] the district court's determination that Lopez's defamation claim was preempted under § 301." *Id.*

In this case, the first amended complaint alleges:

"On or about September 17, 2013, Plaintiff agreed to assist a coworker with finishing a work assignment. When JIMENEZ saw that Plaintiff was performing this additional

work out of order, and which had not been assigned to him, he accused Plaintiff of 'cherry picking.' JIMENEZ immediately suspended Plaintiff. On the same and/or the following day, among other times, including but not limited to at a grievance meeting held on or about October 21, 2014, JIMENEZ falsely stated to the union Shop Steward and others that Plaintiff was dishonest, a liar and/or that Plaintiff had lied to JIMENEZ about where and/or how he received the additional work assignment for which Plaintiff had been accused of cherry picking. In addition, at or about that time, and thereafter, JIMENEZ stated verbally and/or in writing that Plaintiff was dishonest, a liar and/or that Plaintiff had lied about where and/or how he received the additional work assignment at issue. Plaintiff is informed and believes that this false statement by JIMENEZ was repeated and written by JIMENEZ and other employees and/or agents of defendant, including but not limited to being re-stated and re-published in company documents discussing the reasons for Plaintiff's termination and elsewhere."[32]

As can be seen, Huitron alleges that Jimenez defamed him on September 17, 2013, weeks prior to the grievance meeting on October 21, 2013. He also alleges that the defamatory statements were republished at the grievance meeting. Citing this allegation, Article 11 of the CBA,[33] and *Scott v. Machinists Auto. Trades Dist. Lodge No. 190*, 827 F.2d 589 (9th Cir. 1987), defendants argue that

---

[32]FAC, ¶ 13.

[33]Article 11 of the CBA states:
"A grievance shall include . . . any disputed layoff, suspension, dismissal or discharge of any employee who is entitled to contest such action. In any event a grievance must be filed in writing with the Employer. . . . An earnest effort shall be made to settle grievances in a timely manner under the following procedure: [a.] The Employer, employee and Shop Steward, if desired by the employee, shall meet and attempt to resolve any grievance. [b.] If no resolution is reached after Step 1, the grievance shall be reduced to writing within seven (7) working days after the known occurrence of the act, which resulted in the grievance. The Business Representative of the Union and a representative of the Employer shall meet within fifteen (15) calendar days from the filing of the written grievance, or a longer period of time if mutually agreed upon, to resolve the grievance. [c.] If a representative of the Employer and the Union cannot settle a grievance as outlined above, the matter shall be referred to arbitration[.]" CBA at 7.

because purportedly defamatory statements were made at the grievance meeting, the claim is preempted. See *id.* at 594 ("The allegedly defamatory remarks were made in the course of a counseling session and the prearbitration meetings and investigative hearings.  The defamation claim cannot be evaluated apart from the grievance procedure provided by the contract, and thus is preempted by federal labor law").

The court finds defendants' reliance on *Scott* unavailing with respect to the September 17, 2014 statement, as it was made well in advance of the grievance meeting and thus is not inextricably intertwined with the grievance procedures set forth in the CBA.  Indeed, the *Scott* court distinguished *Tellez* on the basis that the defamatory statements in *Scott* occurred during the course of a mandated grievance procedure.  *Scott*, 827 F.2d at 594.  Here, by contrast, the September 17, 2014 statement was published more than a month *before* the grievance meeting; the statement therefore does not come within the ambit of *Scott.*  See *Busey v. P.W. Supermarkets, Inc.*, 368 F.Supp.2d 1045, 1051 (N.D. Cal. 2005) ("Further, unlike *Shane*, the allegedly false statements were not made in the course of a grievance proceeding specifically outlined in the CBA, but rather, in an informal memorandum. . . .  Plaintiff's claim for defamation is, therefore, an 'independent' state claim and is not preempted by Section 301").

Defendants dispute this conclusion, arguing that Huitron admitted at his deposition that the only time he was defamed was at the October 21, 2013 grievance meeting.[34]  This is a mischaracterization of his testimony, however.  Huitron testified that the "first time he [heard Jimenez] mention the word 'dishonesty' . . . was [at] the grievance meeting of October 21[, 2013]."[35]  Elsewhere in his deposition, however, he stated that Jimenez called him a liar on September 17, 2013.[36]  Nonetheless, the fact that the complaint alleges that the defamatory statement was republished at the October 21, 2013, grievance meeting affects the preemption analysis.  This is because, under *Scott*, statements made at a grievance hearing are deemed to be "inextricably intertwined with the grievance machinery of the collective

---

[34]Opposition at 18-19.

[35]Zee Decl., Exh. A (Deposition of Ricardo Huitron ("Huitron Depo.")) at 512:8-10.

[36]*Id.* at 494:21-25 ("Q. What other facts or other statements do you claim were made about you by Mr. Jimenez? . . . A. Other than saying I'm a liar?").

bargaining agreement." See *Scott*, 827 F.2d at 594.  Thus, to the extent the defamation claims are based on the October 21, 2013 statement, they would be preempted by § 301.  See *Garley v. Sandia Corp.*, 236 F.3d 1200, 1214 (10th Cir. 2001) ("The fact that Garley's claim for intentional infliction of emotional distress, to the extent that it is based on Sandia's actions leading to his dismissal, is preempted by § 301, does not require us to arrive at the same conclusion with respect to Garley's second factual predicate for his claim").

As Huitron argues,[37] however, defendants' removal on the basis of this allegation was untimely. Huitron's first amended complaint was filed on February 10, 2014.[38]  It alleged: "On the same and/or the following day [as Huitron's suspension], *including but not limited to at a grievance meeeting held on or about October 21, 2014,* Jimenez falsely stated to the union shop steward and others that [Huitron] was dishonest. . . ."[39]  This allegation clearly put defendants on notice that the defamation claim was based, in part, on statements made a grievance meeting.  Nonetheless, they did not remove within thirty days after receipt of the first amended complaint.  See 28 U.S.C. § 1446(b)(3) ("[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable").  Rather, they waited some ten months after that date. Section 1446(b)(3)'s thirty-day requirement applies to removals based on complete preemption under § 301.  See *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980).  The removal was thus untimely.

Defendants contend their delay is excused because Huitron previously asserted that the union had refused to arbitrate his claims, and that this led them to believe the case was not removable.  They assert it was not until the November 7, 2014 deposition of Felipe Osorio, a union shop steward, that they learned the union had been willing to pursue arbitration on Huitron's behalf, and that it had been Huitron

---

[37]Motion at 22.

[38]Removal, Exh. 1 (FAC).

[39]FAC, ¶ 13 (emphasis added).

1   who said did not wish to do so.[40]  This contention fails for two reasons.

2         First, and most fundamentally, failure to exhaust remedies under a CBA is an affirmative defense

3   that must be pled and proved by defendants.  See *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70,

4   75 (1998) ("Respondents' answer asserted various affirmative defenses, including Wright's failure to

5   exhaust his remedies under the CBA and the Seniority Plan"); *Martinez v. J. Fletcher Creamer & Son,*

6   *Inc.*, No. CV 10 0968 PSG (FMOx), 2010 WL 3359372, *2 (C.D. Cal. Aug. 13, 2010) ("In its Answer

7   to Plaintiff's Complaint, Defendant asserts, *inter alia,* two affirmative  defenses: (1) each of Plaintiff's

8   claims [is] barred for failure to exhaust his administrative remedies under the CBA and (2) each of

9   Plaintiff's claims [is] barred by the CBA's mandatory arbitration clause").

10        Defendants' reliance on the CBA's arbitration provision is a defense to Huitron's defamation

11   claim; thus, it does not give rise to § 301 preemption.  See *Humble,* 305 F.3d at 1011 ("Boeing argues

12   that when it offers a non-discriminatory justification for its conduct by relying on authorizing CBA

13   provisions, that suffices to trigger preemption of Humble's reasonable accommodation claim. This

14   argument is unavailing after *Cramer,* which held that reliance on CBA provisions to defend against an

15   independent state law claim does not trigger § 301 preemption"); *Vasserman*, 2014 WL 6896033 at *15

16   ("[B]ecause . . . Newhall Memorial's reliance on § 514 is essentially a defense to Vasserman's overtime

17   claim, it does not give rise to § 301 preemption"); *Placencia*, 2014 WL 2445957 at *2 ("[R]eliance on

18   the CBA as an aspect of a defense is not enough to 'inject[ ] a federal question into an action that asserts

19   what is plainly a state-law claim,'" citing *Caterpillar*, 482 U.S. at 399).[41]

20        Second, whether or not the union refused to arbitrate Huitron's claims is irrelevant in assessing

21   whether the claims are preempted by § 301.  If defendants believed Huitron's claims were preempted

22   by § 301, they had an obligation to remove, and could then have sought an order compelling arbitration

24   [40]Opposition at 6 (citing Zee Decl., Exh. B (Deposition of Felipe Osorio ("Osorio Depo.)) at
25   55:7-16.

26   [41]It appears, in fact, that defendants' removal of *all* of Huitron's claims was untimely because
     their only basis for removing ten months after the filing of the first amended complaint was their alleged
27   "discovery" of a new affirmative defense – failure to exhaust remedies under the CBA.  Because
     plaintiff addressed timeliness only in the context of his defamation claim, however, the court similarly
28   limited its discussion.

of the claims.  See *Portland Web Pressmen's Union, Local No. 17 v. Oregonian Pub. Co.*, 286 F.2d 4, 7 (9th Cir. 1960) ("Under § 301 . . . , the federal courts are empowered to compel arbitration under collective bargaining agreements, provided that the movants establish a contractual right to arbitrate"); *Araiza v. Nat'l Steel & Shipbuilding Co.*, 973 F.Supp. 963, 964 (S.D. Cal. 1997) ("Defendants move to compel Plaintiff to arbitrate his claims in accordance with the grievance and arbitration provisions of his union's CBA"); see also *Granite Rock Co. v. Teamsters Union Local No. 890*, No. CV 12-02974 MEJ, 2012 WL 5877494, *7 (N.D. Cal. Nov. 20, 2012) (dismissing a complaint seeking to compel a union to arbitrate certain grievances under § 301 because the disputes were not covered by the CBA, but noting the power to compel a union to arbitrate in a proper case).

In sum, because defendants offer no plausible argument as to why Jimenez's September 17, 2013 statement requires recourse to the CBA, complete preemption cannot be founded on this statement. While the October 21, 2013 statement is "based on facts inextricably intertwined with the grievance machinery of the collective bargaining agreement," *Scott*, 827 F.2d at 594, because that fact was apparent on the face of the first amended complaint filed February 10, 2014, and defendants did not remove until December 5, 2014, the removal was untimely.  Consequently, the defamation claim provides no basis for exercising federal question jurisdiction over this case.

### 3.    Whether the Court Has Diversity Jurisdiction

Defendants contend that even if federal question jurisdiction is lacking, the court has diversity jurisdiction because Jimenez was fraudulently joined.  On July 14, 2014, defendants removed Huitron's state court action, asserting that Jimenez had been fraudulently joined.  On August 25, 2014, the court remanded the action to Los Angeles Superior Court, finding that defendants had not met their burden of showing fraudulent joinder.[42]

When a case is remanded for lack of subject matter jurisdiction, § 1446(d) bars review of the remand order "on appeal or otherwise." 28 U.S.C. § 1447(d); *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 640 (2006) ("[W]e have relentlessly repeated that 'any remand order issued on the grounds specified in § 1447(c) [is immunized from all forms of appellate review], whether or not that order might

---

[42]Order Remanding Action, Case No. CV 14-5482-MMM, Docket No. 19 (Aug. 25, 2014).

be deemed erroneous by an appellate court'" (alterations original)).  "This language has been universally construed to preclude not only appellate review but also reconsideration by the district court." *Seedman v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 837 F.2d 413, 414 (9th Cir. 1988).  "In light of the prohibition against review of a remand order in § 1[4]46(d), once a district court has remanded a case, a defendant generally may not remove the case to federal court a second time." *Lodi Mem'l Hosp. Ass'n, Inc. v. Blue Cross of California*, No. CIV. 12 1071 WBS GGH, 2012 WL 3638506, *3 (E.D. Cal. Aug. 22, 2012) (citing *In re La Providencia Dev. Corp.*, 406 F.2d 251, 252 (1st Cir. 1969) ("[T]he state court proceedings are to be interfered with once, at most.  This is not only in the interest of judicial economy, but out of respect for the state court and in recognition of principles of comity.  The action must not ricochet back and forth depending upon the most recent determination of a federal court")).

Stated differently, "a party is not entitled to file a second notice of removal upon the same grounds where the district court previously remanded the action." *Allen v. UtiliQuest, LLC.*, No. CV 13–4466 SBA, 2014 WL 94337, *2 (N.D. Cal. Jan. 9 2014) (citing *St. Paul & C. Ry. Co. v. McLean*, 108 U.S. 212, 217 (1883) ("[W]e are of opinion that a party is not entitled, under existing laws, to file a second petition for the removal upon the same grounds, where, upon the first removal by the same party, the federal court declined to proceed and remanded the suit, because of his failure to file the required copy within the time fixed by the statute")); see also *Seedman*, 837 F.2d at 414 ("Once a district court certifies a remand order to state court it is divested of jurisdiction and can take no further action on the case. Contrary to respondent's position, a second removal petition based on the same grounds does not 'reinvest' the court's jurisdiction.  A remand order returns the case to the state courts and the federal court has no power to retrieve it.  As the statute makes clear, if the remand order is based on section 1447(c), a district court has no power to correct or vacate it"); see also *Andersen v. Schwan Food Co.*, No. CV 13–02208 JGB, 2014 WL 1266785, *4 (C.D.Cal. Mar. 26, 2014) (same).

This general prohibition on successive removals, however, does not apply "when subsequent pleadings or events reveal *a new and different* ground for removal."  *Kirkbride v. Continental Casualty Co.*, 933 F.2d 729, 732 (9th Cir. 1991) (quoting *FDIC v. Santiago Plaza,* 598 F.2d 634, 636 (1st Cir. 1979) (emphasis original)); *Andersen*, 2014 WL 1266785 at *5 ("Thus, the court recognized that the information required for removal was available to Defendants at the time of the first removal as it was

'uniquely within the records of Schwan.' . . . Accordingly, Defendants have not demonstrated that their 'second notice of removal is based on newly discovered facts not available at the time of the first removal,' and thus their successive removal is improper"); *Sweet v. United Parcel Serv., Inc.*, CV No. 09–02653 DDP, 2009 WL 1664644, *3 (C.D. Cal. June 15, 2009) ("[C]onsistent with a public policy that 'guards against premature and protective removals and minimizes the potential for a cottage industry of removal litigation,' successive removals must be based on new information," quoting *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005)). "Successive removals are therefore improper '[a]bsent a showing that the posture of the case has so changed that it is substantially a new case.'" *Leon v. Gordon Trucking, Inc*., __ F.Supp.3d __, 2014 WL 7447701, *5 (C.D. Cal. Dec. 31, 2014) (quoting *One Sylvan Rd. N. Associates v. Lark Int'l, Ltd.*, 889 F.Supp. 60, 65 (D. Conn. 1995)).

Defendants appear to contend that in the less than four months between the earlier remand and their second removal, the case has changed so drastically that it is "substantially a new case." *Leon*, 2014 WL 7447701, at *5. The court is not persuaded. The only "new" facts that defendants identify are the fact that Huitron abandoned the grievance process and that he identified only one statement support his defamation claims at his deposition.[43] It is unclear how evidence that Huitron declined to arbitrate his defamation claims gives rise to diversity jurisdiction, as Jimenez's citizenship has not changed, and remains the same as Huitron's. Defendants' assertion that Huitron identified only one defamatory statement, which was made during the grievance meeting, – in addition to being incorrect – is based on deposition testimony given on June 23, 2014. This testimony was available to defendants at the time the court issued an order to show cause and later remanded the case. In fact, defendants cited testimony from the same deposition in their response to the order to show cause.[44] Thus, removal is not permitted on the basis of that testimony because "successive removals must be based on new information." See *Sweet*, 2009 WL 1664644 at *3.

Because defendants' argument that they can remove on the basis of diversity jurisdiction is

---

[43]Opposition at 24.

[44]See Declaration of Kristen Agnew, Case No. CV 14-5482-MMM, Docket No. 15-1 (July 31, 2014), Exh. C (Deposition of Ricardo Huitron).

1    merely a motion for reconsideration of the court's prior remand order, the court lacks jurisdiction to

2    consider it. *Seedman*, 837 F.2d at 414 ("[§ 1447(d)] has been universally construed to preclude not only

3    appellate review but also reconsideration by the district court" ).

4    ### 4.    Huitron's Request for Attorneys' Fees

5         In the event the court remands the case, Huitron seeks attorneys' fees under 28 U.S.C. § 1447(c).

6    "Under 28 U.S.C. § 1447(c), '[a]n order remanding the case may require payment of just costs and any

7    actual expenses, including attorney fees, incurred as a result of the removal.'" *Leon*, 2014 WL 7447701

8    at *11. "'Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where

9    the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an

10   objectively reasonable basis exists, fees should be denied.'" *Id*. (quoting *Martin v. Franklin Capital

11   Corp.*, 546 U.S. 132, 141 (2005)).

12        "Removal is not objectively unreasonable solely because the removing party's arguments lack

13   merit and the removal is ultimately unsuccessful." *Id*. (citing *Lussier v. Dollar Tree Stores, Inc*., 518

14   F.3d 1062, 1065 (9th Cir. 2008)). "Rather, the court should assess 'whether the relevant case law clearly

15   foreclosed the defendant's basis of removal' by examining the 'clarity of the law at the time of

16   removal.'" *Id*. (quoting *Lussier*, 518 F.3d at 1066); see also *Patel v. Del Taco, Inc*., 446 F.3d 996, 999-

17   1000 (9th Cir. 2006) ("Del Taco's state court petition to confirm the arbitration award contained only

18   one state law cause of action; it did not contain any federal claim that could provide the basis for a §

19   1441(c) removal.  Joinder of a federal claim and a claim for removal of a state court action in a federal

20   complaint cannot effect a § 1441(c) removal.  There being no objectively reasonable basis for removal,

21   the district court did not abuse its discretion in awarding attorney's fees under § 1447(c) to Del Taco").

22        Huitron contends that attorneys' fees are warranted because defendants' removal clearly lacked

23   merit, and interfered with his right to be the master of his complaint.  The court declines to award

24   attorneys' fees.  Although not persuasive, the court does not find defendants' arguments in support of

25   removal so objectively unreasonable that they warrant an award of attorneys' fees.  See *Lussier*, 518

26   F.3d at 1065 (noting that while "[t]here is no question that [the defendant's] arguments were losers[,]

27   . . . removal is not objectively unreasonable solely because the removing party's arguments lack merit,

28   or else attorney's fees would always be awarded whenever remand is granted").

1

2 **III. CONCLUSION**

3       For the reasons stated, the court grants Huitron's motion to remand.  Huitron's request for

4 attorneys' fees is denied.  The clerk is directed to remand the action to Los Angeles Superior Court

5 forthwith.

6

7 DATED: March 31, 2015

8                                                      MARGARET M. MORROW
                                                       UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28